Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| FERNANDO MALDONADO SUÁREZ<br><br>Recurrido<br><br>v.<br><br>ARIELLE ZURZOLO CHINSKI<br><br>Peticionaria | TA2025CE00131 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. GM2024RF00124<br><br>Sobre: Divorcio (Ruptura Irreparable); Custodia Provisional; Custodia Monoparental o Compartida; Alimentos (Menores de Edad) |

Panel Especial integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Monge Gómez y la Juez Prats Palerm

Domínguez Irizarry, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de agosto de 2025.

La peticionaria, señora Arielle Zurzolo Chinski, comparece ante nos para que dejemos sin efecto la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala de San Juan, emitida 16 de mayo de 2025 y notificada el 19 de mayo de ese mismo año. Mediante la misma, el foro de origen denegó la solicitud de la parte peticionaria, en la cual peticionaba que no se permitiese que el recurrido, el señor Fernando Maldonado Suárez, utilizara al doctor Larry Emil Alicea Rodríguez, como perito, por alegado conflicto ético.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado.

### I

Durante la vigencia de su unión, los aquí comparecientes procrearon a las menores IMZ y NMZ. El 26 de abril de 2024, el recurrido presentó la demanda de divorcio de epígrafe, por la causal

de ruptura irreparable. En lo pertinente a la controversia ante nuestra consideración, el recurrido solicitó, entre otros remedios, la expedición de un decreto provisional que dispusiera la custodia compartida de las hijas menores de edad, bajo un modelo de co-custodia con igual distribución de tiempo entre ambos progenitores. Además, instó que, en caso de oposición por parte de la peticionaria, el asunto fuera referido a la Unidad de Trabajo Social para que realizara la investigación correspondiente y presentara sus recomendaciones. De igual forma, peticionó que se adoptaran medidas preventivas para evitar cualquier acto de alienación parental que pudiera afectar la relación paterno-filial. Finalmente, solicitó que se prohibiera a la peticionaria remover a las menores de Puerto Rico.

Así, en lo aquí pertinente, el 1 de mayo de 2024, el tribunal primario ordenó a la Unidad Social de Relaciones de Familia efectuar el correspondiente estudio social sobre la custodia y relaciones filiales concerniente.

Por su parte, el 22 de mayo 2024, la peticionaria presentó su *Contestación a Demanda y Reconvención*. En el referido pliego, sostuvo que el demandante carecía de la responsabilidad y disposición necesarias para ejercer la custodia de las menores. En particular, detalló que, desde su nacimiento, no había estado a cargo de atender sus necesidades, delegando tales funciones en ella o en la abuela paterna, y que una de las niñas era lactada, por lo que no resultaba conveniente alterar sus hábitos alimenticios y de apego. Alegó que la solicitud de custodia compartida obedecía a un interés de reducir el pago de pensión alimentaria y que, debido a sus compromisos laborales, el recurrido no disponía del tiempo requerido para asumir el cuido. Añadió que la comunicación entre ambos era deficiente, que las menores habían permanecido bajo su custodia exclusiva por un periodo prolongado y que el contacto del

padre con ellas había sido limitado. Finalmente, solicitó que se denegara la custodia compartida y se le concediera custodia monoparental, por entender que ello respondía al mejor interés y bienestar de las menores.

Tras varios trámites procesales, innecesarios de pormenorizar, la trabajadora social, Ana D. Del Rosario Martínez presentó el Informe de la Unidad Social que le fue encomendado.

Presentado el antedicho Informe y luego de celebrada la vista sobre custodia provisional y relaciones filiales, el 8 de enero de 2025, el Foro primario emitió una *Resolución y Orden* en la cual concedió la custodia compartida provisional de las menores a ambos progenitores y estableció un plan detallado de tenencia con semanas alternas, disposiciones específicas para días festivos, vacaciones y cumpleaños. A su vez, prohibió la relocalización de las menores fuera de Puerto Rico y ordenó la continuación de terapias psicológicas y un proceso de coparentalidad, imponiendo a ambos padres la responsabilidad de atender los asuntos médicos y educativos, mientras las menores estén bajo su cuidado. Finalmente, le concedió veinte (20) días a las partes para que manifestaran si estaban de acuerdo con las recomendaciones emitidas en el Informe de la Unidad Social.

En cumplimiento con lo ordenado, el 28 de enero de 2025, la peticionaria presentó un escrito intitulado *Solicitud de Prórroga para Anunciar Perito y Presentar Moción de Impugnación.* En virtud del mismo, expresó su intención de impugnar el correspondiente Informe. Tras varias incidencias, el 30 de abril de 2025, la peticionaria presentó su *Moción de Impugnación de Informe Social.*[1]

---

[1] Junto a la *Moción de Impugnación de Informe Social*, la peticionaria anejó el *Informe de Impugnación* preparado por su perito, el trabajador social Luis M. Rivera Santiago.

Por su parte, el 2 de mayo de 2025, el recurrido presentó una *Moción Solicitando Término para Presentar Informe Social Forense de Revisión de Gestión Revisora del Perito de la Demandada,* en la que solicitó al Foro primario que le concediera un término de treinta (30) días para presentar el informe pericial del doctor Larry Emil Alicea Rodríguez, a quien había contratado para que revisara la gestión de revisión realizada por el perito de la peticionaria. Expuso que, para cumplir con dicha encomienda, era necesario autorizar al perito a examinar los documentos del expediente judicial que estimara pertinentes, incluyendo el informe de la trabajadora social del Tribunal, las evaluaciones realizadas por Alternativa Psicoeducativa y el Informe Interagencial.

En respuesta, el 5 de mayo de 2025, la peticionaria presentó su *Oposición a que se Utilice al Dr. Larry Emil Alicea a ser Utilizado como Perito del Demandante por Conflicto Ético.* En el pliego, planteó que la designación del doctor Alicea Rodríguez como perito del recurrido constituía un conflicto ético, toda vez que este había sido previamente contactado por su representación legal para fungir como su perito. En específico, expresó que, en el curso de esa comunicación, se le habían compartido detalles sustantivos y confidenciales del caso, incluyendo alegaciones de violencia emocional y asuntos relativos a la seguridad emocional de las menores. Argumentó que permitir la comparecencia del doctor Alicea Rodríguez colocaría a su representada en riesgo de perjuicio, por lo que solicitó que no se le permitiera intervenir ni ser admitido como perito en el presente caso.

Así las cosas, y luego de ciertas incidencias, el 14 de mayo de 2025, el recurrido presentó una *Moción en Cumplimiento de Orden y para que se Deniegue Solicitud de Exclusión de Perito Anunciado por*

*el Demandante.*[2] En lo atinente, el recurrido expuso que, contrario a lo informado por la peticionaria, la designación del doctor Alicea Rodríguez no incurría en conflicto ético alguno. Indicó que el referido perito, mediante declaración jurada, afirmó que mantiene un protocolo estricto al momento de establecer contactos para la contratación de sus servicios, el cual prohíbe discutir aspectos sustantivos del caso en esa etapa inicial, y que dicho protocolo fue observado rigurosamente en este asunto. Precisó, además, que en este caso en particular, fue la licenciada Maribel Rivera Monzón, representante legal de la peticionaria, quien lo contactó inicialmente para solicitar sus servicios como perito. Sin embargo, tan pronto tuvo conocimiento de que el licenciado García López figuraba como abogado de la parte recurrida, le comunicó expresamente que no podía aceptar ni intervenir en el caso. El doctor Alicea Rodríguez manifestó que no mantuvo conversaciones sustantivas sobre el caso con la peticionaria ni con su representación legal, y que su función como perito revisor se limitaba a evaluar el trabajo realizado por otro profesional sin duplicar entrevistas ni investigaciones. En vista de ello, el recurrido solicitó que se declarara *No Ha Lugar* la solicitud de exclusión y que se continuara con los procedimientos.

En respuesta, el mismo 14 de mayo de 2025, la peticionaria incoó una *Réplica a "Moción en Cumplimiento de Orden y para que se Deniegue Solicitud de Exclusión de Perito Anunciado por el Demandante"*.[3] En la misma, indicó que la declaración jurada del doctor Alicea Rodríguez resultaba imprecisa y evasiva, pues no había explicado por qué sostuvo una llamada de veinticuatro (24)

---

[2] Junto a la *Moción en Cumplimiento de Orden y para que se Deniegue Solicitud de Exclusión de Perito Anunciado por el Demandante*, el recurrido presentó la siguiente prueba documental: 1) Declaración Jurada suscrita por el doctor Larry Emil Alicea Rodríguez; 2) Captura de Pantalla de la conversación por mensajes de texto entre la peticionaria y el doctor Alicea Rodríguez.

[3] Junto a la *Réplica a "Moción En Cumplimiento de Orden y para que se Deniegue Solicitud de Exclusión de Perito Anunciado por el Demandante"*, la peticionaria presentó la siguiente prueba documental: 1) Captura de Pantalla de llamada telefónica con el doctor Alicea Rodríguez del 9 de diciembre de 2024; 2) Captura de Pantalla de mensajes de texto sobre el doctor Alicea Rodríguez.

minutos con su representación legal el 9 de diciembre de 2024. La peticionaria afirmó que, durante la referida conversación, el Perito indagó sobre la naturaleza de la contratación, lo que requirió explicarle la naturaleza y el contexto del caso. Sostuvo que, en ese intercambio, el doctor Alicea Rodríguez, a sabiendas de que la comunicación venía referida por abogados, no preguntó quién representaba a la parte contraria, lo cual contradecía su alegado protocolo estricto. La peticionaria planteó que tal proceder por parte del doctor Alicea Rodríguez, suscitaba serias interrogantes respecto a su obligación de preservar la confidencialidad de cualquier contacto previo y de evitar la existencia de conflictos de interés, reales o aparentes. Por lo tanto, reiteró que se declarara *No Ha Lugar* la designación del doctor Alicea Rodríguez como perito del recurrido.

Por su parte, el 15 de mayo de 2025, el recurrido sometió una *Dúplica.* En esencia, reconoció que el perito recibió una llamada de la representación legal de la peticionaria, pero negó que se discutieran asuntos sustantivos del caso. Además, argumentó que las capturas de pantalla presentadas por la peticionaria reflejaban mensajes intercambiados con un tercero y no con el perito.

En respuesta, ese mismo día, la peticionaria presentó una *Réplica a Dúplica,* en la que reiteró sus planteamientos sobre la existencia de comunicación directa entre su representación legal y el perito en cuestión.

Evaluadas las posturas de las partes y la prueba documental presentada, el 16 de mayo de 2025 y notificada el 19 de mayo del mismo año, el Tribunal de Primera Instancia emitió la *Resolución* que nos ocupa. En la misma, declaró *No Ha Lugar* la solicitud de la peticionaria en cuanto a su *Oposición* a que el recurrido utilizara al doctor Alicea Rodríguez como su perito. En consecuencia, autorizó al perito a examinar los documentos del expediente judicial, incluyendo el informe de la trabajadora social del Tribunal, las

evaluaciones realizadas por Alternativa Psicoeducativa y el Informe Interagencial.

Inconforme con lo resuelto, el 3 de junio de 2025, la peticionaria presentó una *Moción de Reconsideración y Solicitud de Aclaración*. No obstante, el Tribunal de Primera Instancia denegó la referida moción el 11 de junio de 2025.

Aún en desacuerdo, la peticionaria comparece ante nos mediante el presente recurso de *certiorari*, y en el mismo formula los siguientes señalamientos de error:

> Primer error: Erró y abusó de su discreción el honorable tribunal de primera instancia al determinar no ha lugar y sin la celebración de vista, la solicitud de descalificación del perito Dr. Larry Alicea, colocando a la parte peticionaria as[í] como a su representación legal en un estado de indefensión ante lo que regula nuestro ordenamiento jurídico.

> Segundo error: Erró y abusó de su discreción el honorable tribunal de primera instancia al permitir la designación del Dr. Larry Alicea como perito de la parte recurrida en grave menosprecio de la credibilidad e integridad de la representación legal de la parte peticionaria ante lo dispuesto en el Código de Ética Profesional de 1970.

> Tercer error: Erró y abusó de su discreción el honorable Tribunal de Primera Instancia al permitir la designación del Dr. Larry Alicea como perito de la parte recurrida en grave menosprecio de los Cánones de Ética del Colegio de Profesionales del Trabajo Social de Puerto Rico.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

## II

Sabido es, que el recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Medina Nazario v. McNeil Healthcare*

*LLC,* 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). Mediante la presentación de un recurso de *certiorari* se pretende la revisión de asuntos interlocutorios que han sido dispuestos por el foro de instancia en el transcurso y manejo del caso que atienden. Distinto al ejercicio de sus funciones respecto a un recurso de apelación, el tribunal al que se recurre mediante el vehículo procesal del recurso de *certiorari* tiene discreción para atender el asunto planteado, ya sea expedir el auto solicitado o denegarlo. *800 Ponce de León v. AIG,* supra; *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 593 (2011); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005).

La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Ahora bien, la correcta consecución de la justicia necesariamente conlleva reconocer a los juzgadores de los foros

primarios un amplio margen de deferencia respecto al ejercicio de sus facultades adjudicativas dentro del proceso que dirigen. De ahí la premisa normativa que califica la tramitación de los asuntos en el tribunal primario como una inherentemente discrecional del juez. Siendo así, y sin apartarse de los preceptos pertinentes al funcionamiento del sistema judicial, el adjudicador concernido está plenamente facultado para conducir el proceso que atiende conforme le dicte su buen juicio y discernimiento, siempre al amparo del derecho aplicable. *In re Collazo I,* 159 DPR 141, 150 (2003). Cónsono con ello, sabido es que los tribunales apelativos no "deben intervenir con determinaciones emitidas por el Foro primario y sustituir el criterio utilizado por éste en el ejercicio de su discreción, salvo que se pruebe que actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

**III**

Al entender sobre la totalidad de los documentos que componen el expediente de autos, no advertimos ningún criterio jurídico particular que justifique dejar sin efecto la determinación recurrida. Nada nos sugiere que, en el ejercicio de sus facultades, el Juez del foro de origen haya incurrido en error o en abuso de la discreción que le asiste, de modo que se haga meritorio que soslayemos la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones. A nuestro juicio, el pronunciamiento en cuestión es producto del adecuado ejercicio de las facultades que le asisten al Juzgador de Primera Instancia en la materia que atendemos, por lo que, ante ello, no resulta preciso que intervengamos. Por tanto, en virtud de lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos no expedir el auto que nos ocupa.

**IV**

Por los fundamentos que anteceden, se deniega la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| FERNANDO MALDONADO SUÁREZ<br><br>Recurrido<br><br>v.<br><br>ARIELLE ZURZOLO CHINSKI<br><br>Peticionaria | TA2025CE00131 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. GM2024RF00124<br><br>Sobre: Divorcio (Ruptura Irreparable); Custodia Provisional; Custodia Monoparental o Compartida; Alimentos (Menores de Edad) |

Panel Especial integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Monge Gómez y la Juez Prats Palerm

### VOTO DISIDENTE DEL JUEZ MONGE GÓMEZ

En San Juan, Puerto Rico, a 21 de agosto de 2025.

En vista del curso de acción tomado por la Mayoría de este Tribunal, y por los fundamentos que expondré a continuación, no puedo suscribir la *Resolución* que hoy emiten mis respetadas compañeras de Panel.

Para propósitos argumentativos, acojo los hechos justo como fueron reseñados en el dictamen emitido en el día de hoy.

A poco que se examinen los planteamientos esgrimidos por las partes ante el Tribunal de Primera Instancia (TPI), se desprende una clara controversia de hechos relacionada con el contenido de la información que presuntamente compartió la representante legal de la Peticionaria antes de que el señor Maldonado Suárez contratara al Dr. Larry Emil Alicea Rodríguez como su perito para el proceso de impugnación del Informe rendido por la trabajadora social del Tribunal. Específicamente, qué información compartió la Lcda. Maribel Rivera Monzón con el doctor Alicea Rodríguez y si la misma

compromete la objetividad de dicho perito y amerita su descalificación.

A mi entender, esta controversia plantea un asunto medular de credibilidad y de debido proceso de ley que, conforme a nuestro ordenamiento jurídico, debe dirimirse en el marco de una vista evidenciaria. Nótese que en el caso de epígrafe se presenta una controversia sobre las versiones que ofrece el perito anunciado por el Recurrido y aquélla que plantea una de las representantes legales de la Peticionaria sobre posibles asuntos medulares del caso y/o confidenciales.

El derecho a utilizar un perito es parte del derecho a presentar prueba, el cual está cobijado por el debido proceso de ley. Sabido es que, en su vertiente procesal, la cláusula del debido proceso de ley establece las garantías mínimas que el Estado debe proveerle a un individuo. Identificado un interés propietario o libertario, procede determinar cuál es el procedimiento exigido, el cual debe caracterizarse por ser justo e imparcial. Así pues, se requiere que se les conceda a las partes una notificación adecuada, la oportunidad de ser oídas, el derecho a contrainterrogar testigos y examinar la prueba adversa, estar asistido por abogado y que la determinación judicial se base en el expediente. PVH Motor v. ASG, 109 DPR 122, 131 (2022).

Negar la celebración de la vista evidenciaria despoja a la Peticionaria de la oportunidad de interrogar al perito de la otra parte, presentar la evidencia que entienda pertinente para establecer lo alegado y convencer al TPI de que la información divulgada tenía carácter confidencial o privilegiado que afecta la objetividad de la opinión pericial del doctor Alicea Rodríguez, quien figura como perito anunciado por el Recurrido. Nuestro andamiaje jurídico está anclado bajo el palio del derecho a un debido proceso de ley que

tiene estirpe constitucional y que, indiscutiblemente, va por encima de cualquier consideración procesal o de manejo de caso.

Reconozco que la doctrina establece que la descalificación de un perito previamente consultado por la parte adversa no procede de manera automática. J. A. Cuevas Segarra, <u>El Descubrimiento de Prueba en la Practica Procesal Civil Puertorriqueña</u>, 1<sup>era</sup> Ed., Barcelona, Bosh Editor, 2023, pág. 177. No obstante lo anterior, como señala el tratadista Cuevas Segarra, los tribunales poseen la facultad inherente de excluir a un perito cuando existe un conflicto de interés, a fin de resguardar la integridad del proceso judicial. <u>Íd</u>., pág. 178. Aunque este remedio constituye una excepción, su aplicación resulta especialmente pertinente cuando hay riesgo de divulgación de confidencias o simplemente por consideraciones de orden público. <u>Íd</u>. De hecho, el tratadista sostiene que, en nuestra jurisdicción, la norma más prudente es prohibir su contratación, incluso como consultor, y con mayor razón como testigo, por ser ello lo más acorde con la justicia y equidad, y para evitar litigaciones innecesarias sobre la existencia de circunstancias verdaderamente excepcionales. <u>Íd</u>., pág. 179.

En vista de lo anterior, y estando latente una controversia sobre la posible falta de objetividad del perito contrato por el Recurrido, considero que le correspondía a la juzgadora de los hechos evaluar la prueba y luego de aquilatarla, efectuar una determinación fundamentada, con el detalle de los factores que guiaron su decisión. La importancia de ello se intensifica en este caso al considerar que las alegaciones de la Peticionaria apuntan a presuntos actos de negligencia que podrían comprometer el bienestar óptimo de los menores involucrados. Este principio, rector en toda controversia de esta índole, exige que el foro primario disponga de un expediente robusto que le permita decidir si, a la luz de la prueba que presente la Peticionaria y de la credibilidad que le

merezcan los testimonios vertidos en sala, procede o no la descalificación del perito en cuestión.

Por los fundamentos expuestos anteriormente, *disiento* pues hubiera *expedido* y *revocado* el dictamen recurrido, a los fines de devolver el caso al foro primario para se procediera con la celebración de una vista evidenciaria respecto a la solicitud de descalificación del perito que presentó la Peticionaria.

**JOSÉ JOHEL MONGE GÓMEZ**
**JUEZ DEL TRIBUNAL DE APELACIONES**